[L.A. No. 30595. Aug. 10, 1976.]

S. P. GROWERS ASSOCIATION, Plaintiff and Respondent, v.
RUFINO RODRIGUEZ et al., Defendants and Appellants.

720

## COUNSEL

Stephen A. Harvey and Richard A. Weinstock for Defendants and Appellants.

David Laufer, Cecily Nyomarky, Richard A. Weisz, James Mattesich, Richard Pearl and Manuel Medeiros as Amici Curiae on behalf of Defendants and Appellants.

Hathaway, Clabaugh, Perrett & Webster and Paul D. Powers for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—At issue is the right of a corporate agricultural employer to evict farmworker tenants from company-owned housing in retaliation for their role in filing suit against the company under the federal Farm Labor Contractor Registration Act.

Defendants are lemon pickers who were employees of plaintiff, a farm labor contractor. Plaintiff, through affiliated companies, provides housing to many of its employees, including these defendants.

On February 25, 1975, defendants, members of a citrus pickers' association unaffiliated with any labor union, walked off their jobs in a dispute over implementation of a previous agreement with plaintiff. Three weeks later, defendants filed suit against plaintiff in federal district court, charging violation of the Farm Labor Contractor Registration Act. (7 U.S.C. § 2041 et seq.) Plaintiff immediately served defendants with eviction notices and, when defendants failed to leave the premises, filed unlawful detainer actions. (Code Civ. Proc., § 1161.)

In the consolidated unlawful detainer proceeding below, defendants sought to raise two affirmative defenses: (1) plaintiff was unlawfully seeking to evict them in retaliation for their strike; and (2) the evictions were in retaliation for the federal suit filed by defendants. The trial court granted plaintiff's motion to exclude evidence regarding both of the affirmative defenses, and entered judgment against defendants.

## I

■ We dispose summarily of defendants' contention that the first affirmative defense should not have been excluded.[1] In the circumstances shown, it is no defense to an unlawful detainer action that plaintiff sought possession of the premises because defendants were on strike. While defendants have a right to strike, plaintiff may hire replacements and, as a corollary, may reserve company housing for those who are working.[2]

## II

The other proposed affirmative defense—that the unlawful detainer action was instituted in improper retaliation against defendants for filing the federal suit—presents a closer question. ■ The starting point in evaluating the proposed defense is the general rule that because an unlawful detainer action is a summary proceeding designed to facilitate owners in obtaining possession of their real property, counterclaims, cross-complaints, and affirmative defenses are inadmissible. (*Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 721 [84 Cal.Rptr. 756].)

However, several exceptions to this judicially created rule have been carved out, and tenants have been permitted to raise a number of defenses in unlawful detainer actions, ranging from promissory fraud (*id.*, at pp. 727-729) to a landlord's failure to maintain an apartment in tenantable condition (*Green* v. *Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168]). Various attempts have been made to categorize the exceptions, culminating in the declaration of this court in

[1]Defendants, in their petition for hearing before this court and in oral argument, have abandoned the first affirmative defense.

[2]Until recently, the Legislature, except in a few limited areas, has maintained a strictly noninterventionist stance in labor relations. While the right of employees to organize is expressly protected under Labor Code section 923, employers and unions alike are generally permitted to use any legitimate economic means at their disposal to achieve their ends. (*Englund* v. *Chavez* (1972) 8 Cal.3d 572, 584-585 [105 Cal.Rptr. 521, 504 P.2d 457]; *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 469 [2 Cal.Rptr. 470, 349 P.2d 76].) Thus, although the public policy behind section 923 prevents an employer from discharging his workers in retaliation for union organizing (*Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793 [13 Cal.Rptr. 769]), no California law prevents an employer from replacing striking employees. Even under the comprehensive administrative scheme embodied in the National Labor Relations Act—which expressly exempts farmworkers from its coverage (29 U.S.C. § 152(3))—an employer may lawfully replace workers who are striking for economic reasons. (*N.L.R.B.* v. *Gopher Aviation, Inc.* (8th Cir. 1968) 402 F.2d 176, 183.) The Agricultural Labor Relations Act (Lab. Code, § 1140 et seq.), patterned after the NLRA, was not yet in effect at the time the current dispute arose.

*Green* that in an unlawful detainer proceeding a tenant may interpose a defense that relates directly to the issue of possession. *(Id.,* at pp. 632-633.)

■ One such recognized defense is a plea that an unlawful detainer action amounts to a "retaliatory eviction." It is settled that a landlord may be precluded from evicting a tenant in retaliation for certain kinds of lawful activities of the tenant. As a landlord has no right to possession when he seeks it for such an invalid reason, a tenant may raise the defense of retaliatory eviction in an unlawful detainer proceeding. *(Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97]; see also *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309].)

In evaluating whether defendants have raised a valid defense of retaliatory eviction, we must engage in a balancing process. We must determine whether the public policies furthered by protecting defendants from eviction outweigh the interests in preserving the summary nature of unlawful detainer proceedings. (*Union Oil, supra,* at p. 726.)

Defendants assert that to allow plaintiff to evict them in retaliation for filing suit under the federal Farm Labor Contractor Registration Act would frustrate the purposes of that act. An analysis of the history behind the measure lends support to defendants' contention. The act was enacted in 1964 in response to a Congressional finding that "the channels and instrumentalities of interstate commerce are being used by certain irresponsible contractors . . . who exploit . . . migrant agricultural laborers, and the public generally . . . ." (7 U.S.C. § 2041(a).) The statute requires farm labor contractors to disclose to each worker all relevant information about his prospective employment and to obtain a certificate from the Secretary of Labor. The secretary is empowered to refuse to renew a certificate if he finds, inter alia, that a contractor has given false information to workers or has failed to comply with his agreements. In the original version of the act, the only penalty for violation was a fine of $500.

But after a decade of experience with the law, testimony before Congress demonstrated that its original objectives had not been achieved. A report of the Senate Labor and Public Welfare Committee declared, "It has become clear that the provisions of the Act cannot be effectively enforced. Non-compliance by those whose activities the Act was intended to regulate has become the rule rather than the exception."

(Sen. Rep. No. 93-1295, 1974 U.S. Code Cong. & Admin. News, at p. 6443 (hereinafter cited as Senate Report).) "It is quite evident," the report continued, "that the Act in its present form provides no real deterrent to violations." (*Id.*) Accordingly, the act was considerably strengthened by 1974 amendments, including a section providing for a private civil remedy (7 U.S.C. § 2050a) and another prohibiting discrimination against a worker in retaliation for filing suit under the act (7 U.S.C. § 2050b).

Thus, it appears that the federal act relies in large part on the initiation of private litigation for its effectiveness. If employer-landlords are permitted to evict farmworker tenants from company-controlled housing in retaliation for such litigation, it can be anticipated that the enforcement of the federal act in this state may rapidly become emasculated. Migrant workers, who often must rely on their employers for housing, will be understandably reluctant to risk losing possession of their homes by taking their landlords to court, regardless of how egregious the latter's violation of the federal law may be.

The injustice inherent in this not uncommon scenario has been increasingly recognized by courts in recent years. In the leading case of *Edwards* v. *Habib* (D.C.Cir. 1968) 397 F.2d 687 [130 App.D.C. 126], the federal Court of Appeals held that a landlord was not empowered to evict in retaliation for his tenant's reporting of housing code violations to the authorities. The court reasoned that the housing codes could not effectively be enforced unless tenants could report violations by landlords without fear of reprisals.

*Edwards* was followed by *Robinson* v. *Diamond Housing Corporation* (D.C.Cir. 1972) 463 F.2d 853 [150 App.D.C. 17], in which a landlord brought a suit for possession against a tenant who, in a separate proceeding, had successfully invoked her right to refuse to pay rent on the ground that her apartment was uninhabitable. The court ruled in favor of the tenant, concluding that her right "would be shallow indeed if the landlord were free to penalize its exercise by eviction." (*Id.*, at p. 863.)

In *Schweiger* v. *Superior Court* (1970) *supra*, 3 Cal.3d 507, this court held that a landlord may not raise rent in retaliation for a tenant's exercise of his right under Civil Code section 1942 to make repairs and deduct their costs from his rent payments. We declared, "Whatever salutary legislative purpose induced the passage of section 1942, it cannot

be achieved if tenants exercising the rights granted by the section may be punished with judicial approbation." (*Id.*, at p. 513.)

While the *Edwards-Schweiger* line of authority lends considerable support to defendants' position, it is arguable that the present case is distinguishable in two respects. First, in each of the former cases a court sought to reconcile an unlawful detainer statute with another statute of the same jurisdiction, while here a state court is called upon to recognize policy underlying federal law. Plaintiff asserts that defendants are powerless to invoke the federal law in state court because exclusive jurisdiction to enforce the act rests in the federal courts and because the power to deal with an eviction in retaliation for invoking the act lies exclusively in the act itself.

Plaintiff's contentions are both inaccurate and inapplicable to the present proceeding. ■ It is well established that a state court has concurrent jurisdiction to enforce a right created by federal law unless the law excludes concurrent jurisdiction or is incompatible with such jurisdiction. (*Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502, 507-508 [7 L.Ed.2d 483, 486-488, 82 S.Ct. 519]; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125]; *McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 59 [315 P.2d 322].) ■ The federal act herein neither expressly nor impliedly excludes a state court from enforcing its provisions, and there is nothing inherent in the nature of the act, such as a comprehensive federal administrative scheme, which militates against concurrent jurisdiction. As for the provision of the act prohibiting discrimination against a worker who invokes the act and prescribing remedies for such discrimination, there is no indication that Congress intended state courts to refrain from imposing their own sanctions. To the contrary, section 2051 of the act provides, "This chapter and the provisions contained herein are intended to supplement State action and compliance with this chapter shall not excuse anyone from compliance with appropriate State law and regulation."

More relevantly, no state court in this proceeding is being called on to interpret or enforce federal law. ■ All defendants ask is that state law be construed so as not to thwart the express purposes of a remedial federal statute. The supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2) commands no less, as was demonstrated by the Supreme Court in *Nash* v. *Florida Industrial Comm'n.* (1967) 389 U.S. 235 [19 L.Ed.2d 438, 88 S.Ct. 362]. There a state unemployment compensation act had been applied to deny benefits to an employee

solely because she filed an unfair labor practice charge with the National Labor Relations Board. The high court held the state act unconstitutional as applied, reasoning that its enforcement under the circumstances of the case tended to frustrate the purpose of the National Labor Relations Act: "Implementation of the Act is dependent upon the initiative of individual persons who must, as petitioner has done here, invoke its sanctions through filing an unfair labor practice charge. Congress has made it clear that it wishes all persons with information about such practices to be completely free from coercion against reporting them to the Board. This is shown by its adoption of § 8(a)(4) which makes it an unfair labor practice for an employer to discriminate against an employee because he has filed charges." (*Id.,* at p. 238 [19 L.Ed.2d at p. 442].) The applicability of the foregoing rationale to this case is apparent. As in *Nash,* an attempt has allegedly been made to retaliate against persons under state law for seeking to invoke a remedial federal statute.[3] Also as in *Nash,* Congress has expressly declared that it desires to encourage persons to come forward with complaints charging violations of the federal act; not only do the 1974 amendments provide for a private civil remedy, but they also prohibit discrimination against a person in retaliation for filing suit under the act. Our duty to enforce the will of the state Legislature is equaled by our responsibility to insure that the intent of Congress is not ignored.

A second factor that arguably sets the present case apart from *Schweiger* and *Edwards* is that the statute which defendants claim they are being evicted for invoking was enacted primarily to protect them as employees, not as tenants. It can readily be seen, however, that under these circumstances this is not a meaningful distinction. To begin with, the federal act recognizes housing as one of the major problems confronting a migrant farmworker. One of the motivating factors behind the act was the failure of many contractors to provide their workers with promised housing or to furnish them with sanitary residences. (Senate Report, *supra,* at p. 6442.) Accordingly, the act requires a contractor to disclose to prospective workers the housing to be provided to them, and,

---

[3] It is significant that the remedy protected by the high court in *Nash*—filing an unfair labor practice charge—lies exclusively within the federal system, i.e., the National Labor Relations Board. (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773].) But even though the state courts had no jurisdiction to entertain the employee's unfair labor practice charge, the Supreme Court held that the courts could not hinder the functioning of the NLRA by enforcing penalties against an employee for invoking the act. Similarly, in the present case, even if plaintiff were correct in asserting that the federal courts have exclusive jurisdiction over the Farm Labor Contractor Registration Act, state courts would still be charged with the duty of assuring that implementation of the act is not frustrated.

in the event a contractor controls the housing, he must post the terms and conditions of occupancy. As the framers of the act recognized, it is difficult to separate the role of employer from that of landlord and the role of farmworker from that of tenant.

Also, the holding of *Schweiger* cannot be limited to the narrow proposition that tenants are protected from retaliation only when they take action concerning the conditions of their tenancy. California case law has not been so restricted. In *Abstract Investment Co.* v. *Hutchinson* (1962) *supra,* 204 Cal.App.2d 242, cited with approval in *Schweiger* and *Green,* a tenant contended that he was being evicted for racial reasons. Although such a complaint did not relate directly to the conditions of tenancy, the Court of Appeal held that a landlord may not permissibly invoke the power of a court to evict a person because of his color.

In a related area, a similarly broad conclusion was reached by the court in *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25]. There an employee was discharged after he refused to testify falsely before an assembly committee. Even though the statutes prohibiting perjury did not affect conditions of employment, the court reasoned that "in order to more fully effectuate the state's declared policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an employee whose employment is for an unspecified duration, when the reason for the dismissal is the employee's refusal to commit perjury." (*Id.,* at p. 189.)

As we said in *Schweiger,* such cases "instruct us that one may not exercise normally unrestricted power if his reasons for its exercise contravene public policy." (*Schweiger, supra,* at p. 516.) ■ At a minimum, *Schweiger* stands for the proposition that "the right not to be deprived in court of home and shelter because of the exercise of statutory rights is a 'broad equitable principle' as deserving of protection as the right to equal protection under the law." (*Id.,* at p. 515.) Statutory public policy must be protected, whether that policy is enunciated by the Legislature or by Congress. ■ In a retaliatory eviction proceeding, the crucial question is not whether the statute is designed to aid tenants, but whether it depends for its effectiveness on private initiative and would thus be emasculated by allowing punitive eviction. In the present circumstances that question must be answered affirmatively. Unless it can be shown that the interests in preserving the summary nature of the unlawful detainer proceeding outweigh the interests in furthering

congressional policy, defendants have raised a legitimate retaliatory eviction defense.[4]

In arguing that preserving the summary nature of unlawful detainer proceedings should control our determination, plaintiff relies exclusively on *Union Oil Co.* v. *Chandler* (1970) *supra,* 4 Cal.App.3d 716, which involved an unlawful detainer action instituted by an oil company against a service station operator. In resisting that action, the lessee sought to demonstrate that the company was terminating the lease in retaliation for his refusal to accede to a gasoline price-fixing scheme that violated federal antitrust laws. The Court of Appeal held in favor of the company on this point, reasoning that, "When we weigh the complex and protracted nature of antitrust cases in the light of the adequate remedies and damages afforded an aggrieved party in such cases against the interest in preserving the summary nature of an unlawful detainer action, we believe the latter to be of paramount importance." (*Id.,* at p. 726.)

But the present case differs from *Union Oil* in two major respects. The first is the burden that allowing an affirmative defense to be heard would place on the trial court. In *Union Oil,* in order to decide whether the eviction was unlawfully retaliatory the trial court would have been compelled to undertake the weighty task of determining whether the company had in fact violated federal antitrust laws. In contrast, the trial court here has not been asked to construe federal law; its only duty is to determine whether plaintiff is seeking to evict defendants in retaliation for filing a suit under the federal act, a function that does not involve considering the merits of the prior suit and is thus no more burdensome than the task imposed on the courts in *Abstract Investment* and *Schweiger.*

[4] Defendants do not invoke Civil Code section 1942.5, which prohibits retaliation against a lessee "because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate governmental agency as to tenantability of a dwelling . . . ." At least one commentator has maintained that under section 1942.5—which was enacted prior to *Schweiger* but went into effect after the opinion issued—a court may protect from retaliation only the tenant conduct specified in the statute. (Note, *Retaliatory Eviction in California: The Legislature Slams the Door and Boards Up the Windows* (1972) 46 So.Cal.L.Rev. 118.) Another author has taken a contrary position, reasoning that section 1942.5 supplements, rather than precludes, the retaliatory eviction defense developed by the case law. (Note, *Retaliatory Eviction as a Defense to Unlawful Detainer—Alternative Approaches?* (1971) 22 Hastings L.J. 1365.) We need not decide that issue because defendants herein rely on the policies behind a federal statute, rather than those underlying state law. Under the supremacy clause, a state statute cannot be applied to circumvent the will of Congress.

Moreover, it must be remembered that *Union Oil* involved a commercial lease, while the present case concerns eviction from a residential dwelling. Like the lessee in *Union Oil*, defendants may file a separate suit to vindicate their business rights, but the existence of such an alternative provides small comfort to a residential tenant. As Justice Douglas puts it, "the home, even though it be in the slums, is where man's roots are. To put him into the street . . . deprives the tenant of a fundamental right without any real opportunity to defend. Then he loses the essence of the controversy, being given only empty promises that somehow, somewhere, someone may allow him to litigate the basic question in the case." (*Lindsey* v. *Normet* (1972) 405 U.S. 56, 90 [31 L.Ed.2d 36, 60, 92 S.Ct. 862] (Douglas, J., dissenting).)

■ In short, the present threat to the summary nature of unlawful detainer proceedings is no greater than that we faced in *Schweiger*, and, as in *Schweiger*, it must be balanced against the more important interest of vindicating statutory public policy. Some minor delay may be incurred in determining if plaintiff's motive was retaliatory; but as the Supreme Court has noted, "Some delay, of course, is inherent in any fair-minded system of justice. . . . Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man is evicted from his home." (*Pernell* v. *Southall Realty* (1974) 416 U.S. 363, 385 [40 L.Ed.2d 198, 214, 94 S.Ct. 1723].) We therefore conclude that the defense presented in this case may be raised in an unlawful detainer proceeding.

This conclusion is unaltered by the fact that in the present case the housing agreement between plaintiff and defendants specified that shelter was provided only for employees. To state that a landlord may evict a tenant who is not an employee adds little or nothing to the powers landlords already have. A landlord may normally evict a tenant for any reason or for no reason at all, but he may not evict for an improper reason: here, retaliation for the tenant's efforts to vindicate an important statutory right.[5]

---

[5] In addition to their valid claim based on the intent behind the federal act, defendants and amici curiae have raised a number of additional contentions in support of the second affirmative defense: (1) the use of the judicial system to effect evictions in this case constitutes state action abridging defendants' First Amendment right to litigate (see discussion in *Edwards* v. *Habib* (D.C.Cir. 1968) *supra*, 397 F.2d 687, 690-696); (2) even if no state action is found, the purported evictions amount to an impermissible private infringement on defendants' right to petition the government, a right that emanates from the very creation of the Constitution (see *id.*, at pp. 696-698); (3) the evictions would violate the Unruh Act (Civ. Code, § 51), which prohibits arbitrary discrimination by a business establishment (see *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

992]); (4) plaintiff's actions not only tend to frustrate the purposes of the federal act, but are in direct violation of 7 United States Code section 2050b, which proscribes discrimination against a person in retaliation for filing suit for just cause under the act. As defendants prevail for the reasons already stated, we need not decide the validity of these additional contentions.