[Civ. No. 20698. Fourth Dist., Div. Two. July 24, 1980.]

RAYMOND L. SCHULMAN et al., Plaintiffs and Respondents, v. JOSEPH ANTHONY VERA et al., Defendants and Appellants.

COUNSEL

Allard, Shelton & O'Connor and Keith A. Johnson for Defendants and Appellants.

Jones & Pittullo and Sidney W. Jones for Plaintiffs and Respondents.

OPINION

KAUFMAN, J.—Defendants (lessees) appeal from a judgment in favor of plaintiffs (lessors) in unlawful detainer based upon lessees' failure to pay rent in accordance with a written lease between the parties.

On appeal lessees contend that the trial court erred in precluding evidence of and striking their alleged affirmative defense that lessors breached their covenant to repair the roof of the leased premises; that the notice to pay rent or quit was defective, depriving the trial court of jurisdiction; that the damages awarded lessors in the judgment incorrectly include an amount equal to the second installment of real property taxes for the fiscal year 1977-1978; and that the court incorrectly failed to credit lessees for a claimed advance rental payment in the amount of $3,000.

*Facts*

The lease between the parties was entered into on November 30, 1977. The leased premises consisted of a commercial building in the City of Ontario to be used by lessees for conducting a restaurant business.

The lease specified two terms. The first term was from December 15, 1977, to the end of that year. The second was for five years, commencing January 1, 1978. Total rent for the five-year term was $90,000, $4,500 of which was payable on execution of the lease and the remainder of which was to be paid at a rate of $1,500 per month. In addition, lessees were to pay "an additional rental amount equal to the real property taxes" (hereafter property taxes), as well as certain assessments. The time for payment of the property taxes was not specified.

The lease provided that lessees should maintain and repair the leased premises "excepting exterior walls, roofs and exterior paved areas." As to the latter it was provided in paragraph VII: "In the event that the exterior paved areas or roof or exterior walls of the building hereby demised shall be in need of repairs, LESSOR shall repair the same at its expense within a reasonable time after receiving written notice from LESSEE that such repair is necessary and specifying the extent and location of the damage requiring repair."

Paragraph XIII provided that in the event of any breach by lessees and their failure to remedy the breach within 10 days after notice from lessors, "then LESSOR besides other rights or remedies he may have, shall have the immediate right to re-entry" and the option of terminating the lease or reletting the premises, in essence, on behalf of lessees. In the event the breach by lessees consisted of a failure to pay rent, the time given lessees to remedy the breach was specified to be five days after notice rather than ten.

In paragraph XVI it was provided that the prevailing party in any suit for unlawful detainer or recovery of rent should recover reasonable attorney fees.

Subsequent to execution of the original lease, an addendum was executed granting lessees an option to renew for five years at an increased rent.

On or about December 15, 1977, lessees took possession of the property having paid the sums due under the lease upon its execution, including the first payment of rent for the second term in the amount of $4,500. Thereafter, lessees timely paid the rent due on the first day of February, March and April 1978.

The second installment of property taxes for fiscal year 1977-1978 was to become delinquent April 10, 1978, and lessees were so notified by lessors. On April 10, lessors requested the payment of the additional rent in an amount equal to the second installment of real property taxes then due, $1,550.41. Lessees refused to pay. The next day lessors' attorney sent lessees a notice of default in the payment of rent, demanding that the default be cured within five days. On May 18, 1978, the additional rent on account of the property taxes still not having been paid,

lessors filed an action for unlawful detainer. The complaint did not seek termination of the lease but, rather, recovery of possession for reletting on behalf of lessees pursuant to the lease.

Lessees failed to pay the $1,500 rent due on May 1, 1978, and on May 3 lessors made a written demand for payment of that rent installment as well as the additional rent on account of the property taxes, pointing out that the defaults must be cured within five days. Lessees again failed to pay the rent due on June 1 in the amount of $1,500. On June 2 lessors had served on lessees a written notice to pay all rent then due within three days or to quit the premises. The notice stated that if the sums due were not paid the lease would be terminated. Payment having not been made by lessees, on June 13 lessors filed the instant action for unlawful detainer based on the June 2 notice and the same day dismissed the unlawful detainer action filed earlier. In conformity with the June 2 notice, the complaint in the instant action prayed that the lease be terminated.

In their answer lessees set forth an affirmative defense which in essence alleged that lessors had breached their covenant to repair the roof of the building causing lessees damages in excess of $10,000. Specifically, lessees claimed that throughout the spring of 1978 the roof leaked water, forcing lessees to operate their restaurant with buckets on the tables to catch the leaking water and with two inches of standing water on one portion of the floor of the restaurant. When the matter came on for trial, prior to the presentation of evidence, counsel for lessors moved, in effect, to strike the affirmative defense and to preclude the presentation of evidence with respect to it. Following argument, the court granted the motion, observing that lessees might file an action for damages for lessors' alleged breach of covenant, but that this claim could not appropriately be asserted as a defense and litigated in this unlawful detainer action.

The case then proceeded to trial which resulted in a judgment in favor of lessors, terminating the lease, restoring lessors' possession and awarding lessors damages in the amount of $7,550.41 ($1,500 due on the first day of May, June, July and Aug. 1978, plus additional rent on account of the property taxes due Apr. 10, 1978, in the amount of $1,550.41) plus $49.32 per day for use of the premises from September 1, 1978, until lessees restored possession of the premises to lessors.

*Discussion and Resolution of Issues*

*The Affirmative Defense—Lessors' Breach
of Covenant to Repair*

Prior to the decision in *Green* v. *Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168], it was well settled, at least with respect to leases of real property for commercial purposes, that a lessee's claim for damages allegedly resulting from a breach of the lessor's covenant to repair could not be asserted as a defense and litigated in an unlawful detainer action by the lessor based on the lessee's non-payment of rent. The lessee was not without remedy; if the conditions resulting from the lessor's breach of covenant to repair were such as to constitute a constructive eviction, the lessee could quit the premises and sue for damages (e.g., *Groh* v. *Kover's Bull Pen, Inc.*, (1963) 221 Cal. App.2d 611, 614 [34 Cal.Rptr. 637]); if the conditions resulting from the breach of the covenant to repair did not amount to a constructive conviction or if the lessee elected to remain in possession of the premises, with or without having the necessary repairs made himself, the lessee could institute an action for damages (e.g., *Kulawitz* v. *Pacific etc. Paper Co.* (1944) 25 Cal.2d 664, 672 [155 P.2d 24]). (*Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 139-141 [126 Cal.Rptr. 690].) The one thing the lessee could not do was to remain in possession of the premises without paying rent, await the lessor's filing of an unlawful detainer action and then set up the claim of damages for the lessor's breach of covenant as a defense to the unlawful detainer. (*Arnold* v. *Krigbaum* (1915) 169 Cal. 143, 145-146 [146 P. 423]; cf. *Veysey* v. *Moriyama* (1921) 184 Cal. 802, 805-806 [195 P. 662, 20 A.L.R. 1363]; *Petroleum Collections Inc.* v. *Swords* (1975) 48 Cal. App.3d 841, 847 [122 Cal.Rptr. 114].)

Perhaps the leading California case on the point is *Arnold* v. *Krigbaum, supra,* in which the court stated: "It appears to be thoroughly established both in this state and in other jurisdictions having substantially similar statutes to our unlawful detainer statutes, that neither a counterclaim nor cross-complaint of any kind is permissible in an action in unlawful detainer. . . . There is no distinction in the authorities between cases where the subject-matter of the attempted counter-claim or cross-complaint arises out of a violation of the terms of the lease upon which the action is brought, and other cases. . . . A covenant to repair on the part of the lessor and a covenant to pay rent on the part of the

lessee are usually considered as independent covenants, and unless the covenant to repair is expressly or impliedly made a condition precedent to the covenant to pay rent, the breach of the former does not justify the refusal on the part of the lessee to perform the latter. . . . '[A tenant] cannot justify an unlawful detainer by alleging a violation of a covenant to repair prior to the commencement of the proceedings. . . . There is no difference of opinion upon this question. All of the cases cited to the contrary by defendant's counsel simply bear upon the right of a tenant to counterclaim for damages in an action brought to recover rent.'. . . 'The very object the legislature had in view in enacting the statute. . . was to afford a summary and adequate remedy for obtaining possession of premises withheld by tenants in violation of the covenants of their lease, and this object would be entirely frustrated if tenants were permitted to interpose every defense usual or permissible in ordinary actions at law. . . . In such proceedings counterclaims and offsets are not available.'" (169 Cal. at pp. 145-146; see also *Hosang* v. *Minor* (1962) 205 Cal.App.2d 269, 271-272 [22 Cal.Rptr. 794], and cases there cited.)

Neither *Medico-Dental etc. Co.* v. *Horton & Converse* (1942) 21 Cal.2d 411 [132 P.2d 457], nor *Groh* v. *Kover's Bull Pen, Inc., supra,* 221 Cal.App.2d 611, is to the contrary. While the opinions in both cases contain some discussion of the independent or dependent nature of the covenant to pay rent vis-à-vis covenants made by the lessor, neither case involved an unlawful detainer action. *Medico-Dental* was an action by the lessor solely for rent. *Groh* was an action by the lessee who had been constructively evicted by the lessor's breach of covenant to repair, to recover a substantial security deposit and damages. In distinguishing *Arnold* v. *Krigbaum, supra,* 169 Cal. 143, the court in *Medico-Dental* expressly noted the distinction between an unlawful detainer action and the case before it.[1] (21 Cal.2d at pp. 420-421.)

---

[1]The court in *Medico-Dental* distinguished *Arnold* v. *Krigbaum, supra,* 169 Cal. 143, as follows: "The first case, *Arnold* v. *Krigbaum, supra,* was an action in *unlawful detainer,* [ital. in orig.] and to recover the amount of rent due. It was held that a counterclaim for damages for failure to make repairs could not be asserted in such proceeding. The decision is predicated upon the principle that the unlawful detainer act was intended to provide a summary remedy for the restitution of the possession of premises withheld by tenants in violation of the covenants of their leases, which statute would be frustrated and rendered wholly inadequate by the interposition of the defenses usually permitted in ordinary cases of law. Thus, whether the parties' respective promises were independent or dependent did not enter as a factor in the determination of the case. However, plaintiff directs particular attention to the court's language at p. 145: 'A covenant to repair on the part of the lessor and a covenant to pay rent on the part of

 It is the contention of lessees that the decision in *Green* v. *Superior Court, supra*, 10 Cal.3d 616, changed the well-settled law with respect to commercial leases that a lessee's claim for damages from an alleged breach by the lessor of a covenant to repair could not be set up by the lessee as a defense to an unlawful detainer action by the lessor based on the lessee's nonpayment of rent. Lessees correctly point out that in *Green* the court discarded the independent covenant doctrine as an anachronism of landlord-tenant law developed during the Middle Ages, no longer accurately reflecting the relationship between landlord and tenant. Then, as lessees observe, finding the lessee's obligation to pay rent dependent upon and mutual with the lessor's implied warranty of habitability, the court in *Green* determined that the lessor's breach of the implied warranty was relevant to the issue of the tenant's obligation to pay rent and, thus, the right to possession of the premises. The court then concluded that the lessor's breach of the warranty could be litigated in defense of the lessor's unlawful detainer action. Lessees urge that by parity of reasoning, lessors' alleged breach of their covenant to repair the roof should be litigable in this unlawful detainer proceeding.

Lessors contend that the express language of the court in *Green* limited the decision to noncommercial, residential leases; that the rationale for the decision was related almost entirely to the relationship between landlord and tenant in leases of urban, residential property; and that the *Green* decision did not and was not intended to alter the well-established law relating to commercial leases. We agree.

While there is some language in the decision which, taken out of context, might be broad enough to include leases of real property for commercial purposes, the primary rationale for the decision in *Green* was the change in the relationship between landlord and tenant in respect to urban, residential leases, and the court repeatedly restricted its statements and its holding to residential leases.[2] The court stressed the

---

the lessee are *usually* [italics in original] considered as independent covenants, and unless the covenant to repair is expressly or *impliedly* [italics in original] made a condition precedent to the covenant to pay rent, the breach of the former does not justify the refusal on the part of the lessee to perform the latter.' (Italics ours.) Regardless of the immateriality of this statement to the disposition of the unlawful detainer proceeding, such observation by its qualifying tenor indicates that there may be circumstances in which a particular covenant, even one to make repairs, may be dependent without an express stipulation in the lease to that effect." (21 Cal.2d at pp. 420-421.)

[2]For example, the court stated: "In today's urban residential leases, however, land as such plays no comparable role. The typical city dweller, who frequently leases an apart-

complexity of modern apartment buildings having complicated heating, electrical and plumbing systems hidden from view, the limited tenure of today's urban tenant which frequently will not justify extensive repair efforts, the unavailability to the average urban apartment dweller of financing for major repairs, and the unequal bargaining power of landlord and tenant resulting from the scarcity of adequate housing in urban areas. (10 Cal.3d at pp. 624-625.)

A lessor's breach of a covenant to repair contained in a commercial lease is a substantially different matter. The parties are more likely to have equal bargaining power, and, more importantly, a commercial tenant will presumably have sufficient interest in the demised premises to make needed repairs and the means to make the needed repairs himself or herself, if necessary, and then sue the lessor for damages.

It is our conclusion that the *Green* decision is and was intended by the court to be restricted to residential leases. We are strengthened in this view by the fact that several times in the *Green* opinion the court mentioned the decision in *Arnold* v. *Krigbaum, supra*, 169 Cal. 143, but failed to overrule that decision. This court, as an intermediate appellate court, is bound to follow precedential decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court*, 57 Cal.2d 450 (1962) 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

We also note two decisions subsequent to the *Green* decision, both of which tend to indicate that *Green* did not effect any change in the law with respect to commercial leases. In distinguishing *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 726 [84 Cal.Rptr. 756], from the case before it in relation to preserving the summary nature of unlawful detainer proceedings, the court in *S.P. Growers Assn.* v. *Rodriguez*

---

ment several stories above the actual plot of land on which an apartment building rests, cannot realistically be viewed as acquiring an interest in the land; rather he has contracted for a place to live." (10 Cal.3d at p. 623.) And: "Our holding in this case reflects our belief that the application of contract principles, including the mutual dependency of covenants, is particularly appropriate in dealing with residential leases of urban dwelling units." (10 Cal.3d at p. 624.) Again: "[W]e agree with the *Hinson* [*Hinson* v. *Delis* (1972) 26 Cal.App.3d 62 (102 Cal.Rptr. 661)] court's determination that modern conditions compel the recognition of a common law implied warranty of habitability in residential leases." (10 Cal.3d at p. 629.) And again: "Thus, in keeping with the contemporary trend to analyze urban residential leases under modern contractual principles, we now conclude that the tenant's duty to pay rent is 'mutually dependent' upon the landlord's fulfillment of his implied warranty of habitability." (10 Cal.3d at p. 635.)

(1976) 17 Cal.3d 719, 730 [131 Cal.Rptr. 761, 552 P.2d 721], pointed out: "Moreover, it must be remembered that *Union Oil* involved a commercial lease, while the present case concerns eviction from a residential dwelling."

Although no unlawful detainer action was there involved, the court in *Guntert* v. *City of Stockton, supra*, 55 Cal.App.3d at pages 139-140, summarized the remedies of the lessee for an alleged breach of the implied covenant of quiet enjoyment by the lessor as follows: "Upon a lessor's breach of lease, the tenant has a choice of remedies. If the broken covenant is a condition precedent in the contract sense, he may elect to move out, cease payment of rent and under some circumstances seek damages. [Citation.] He also has the alternative of continuing under the lease and suing for breach-of-contract damages. [Citations.]"

Finally, we find significant what was said by the Supreme Court in *Medico-Dental etc. Co.* v. *Horton & Converse, supra*, 21 Cal.2d at pages 420-421, distinguishing the decision in *Arnold* v. *Krigbaum, supra*, 169 Cal. 143, on the basis that the decision in *Arnold* was predicated upon the necessity of preserving the summary nature of unlawful detainer proceedings· (see fn. 1, *ante*). "The unlawful detainer statutes were...enacted to provide an adequate, expeditious and summary procedure for regaining possession of real property wrongfully withheld by a tenant. [Fn. omitted.] The rights and remedies afforded a landlord by the statutory provisions are given in lieu of...common law rights and remedies which included the right to enter and expel the tenant by force." (*Childs* v. *Eltinge* (1973) 29 Cal.App.3d 843, 853 [105 Cal.Rptr. 864]; see also *Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 255 [142 Cal.Rptr. 414, 572 P.2d 28]; *S.P. Growers Assn.* v. *Rodriguez, supra*, 17 Cal.3d at pp. 729-730; *Green* v. *Superior Court, supra*, 10 Cal.3d at pp. 632-633.) While the cases, probably because of the historical sources of the rules of law, have discussed the issue at hand in terms of dependence or independence of the parties' covenants, what was said by the court in *Medico-Dental* in distinguishing *Arnold* v. *Krigbaum* suggests that the real issue in determining whether a lessor's breach of covenant may be litigated by a lessee in defense of an unlawful detainer action is whether the need for litigating that matter in the unlawful detainer action is so vital as to overcome the public policy underlying the summary nature of unlawful detainer. Unless we misread it, that is precisely the approach suggested and utilized by the Supreme Court in *S.P. Growers Assn.* v. *Rodriguez, supra*, 17 Cal.3d at pages

729-730. (See also *Union Oil Co.* v. *Chandler, supra*, 4 Cal.App.3d at p. 726.)

In the case at bench if lessees had been permitted to litigate their claim of damages from lessors' breach of covenant to repair, the summary nature of the unlawful detainer procedure would have been destroyed. There would have been injected into the action issues of whether or not lessees properly notified the lessors of the need for repairs, whether the repairs were in fact needed, whether or not lessors failed to repair within a reasonable time, the nature and extent of the damages resulting from the failure to repair, whether or not lessees took proper measures to mitigate damages, the reasonable cost of making the required repairs, and whether or not lessees had the means to have the repairs made themselves. By contrast, no reason appears why lessees' alternative remedies to recover damages for lessors' alleged breach were inadequate.

The trial court correctly concluded that lessees' claim was not properly litigable in the unlawful detainer proceeding.

*Defective Notice*

Lessees' arguments that the three-day notice to pay or quit given them on June 2, 1978, was defective are three. ■ First, it is urged that the trial court erroneously determined that the additional rent on account of property taxes was due April 10, 1978. Lessees assert that inasmuch as the lease failed to specify the date or dates upon which the additional rent was due and the lease was drafted by lessors' attorneys, the ambiguity should have been resolved favorably to lessees. However, the trial court based its determination on conflicting extrinsic evidence including testimony by lessees that they knew *they* were supposed to pay the taxes. It was hardly unreasonable to conclude the additional rent on account of property taxes was to be paid prior to the taxes becoming delinquent. In any event, the question was determined as one of fact by the trial court, is supported by substantial evidence and will not be overturned on appeal.

■ The second argument is that the June 2 notice gave lessees only three days to cure the defaults, whereas under the lease they were entitled to five days in which to cure defaults in the payment of rent. Lessees urge that unlawful detainer is a statutory remedy and the statu-

tory requirements must be strictly complied with. We agree. However, subdivision 2 of section 1161 of the Code of Civil Procedure specifically prescribes three days as the proper notice to be given for the cure of default in payment of rent, so the statutorily prescribed notice was given.

Lessees' argument that the notice was jurisdictionally defective because the lease provided for five days' notice of default in payment of rent is without merit. The jurisdictional notice is that prescribed by the statute. The contractual five-day notice requirement was substantially complied with. With respect to the nonpayment of the additional rent due April 10 and the $1,500 rent due May 1, the lessees had already had notice way in excess of five days and had failed to cure the defaults. With respect to the $1,500 rent due June 1, lessees also had in reality more than five days in which to cure the default. Lessors did not file the instant unlawful detainer action until June 13, 11 days after the June 2 notice. Lessees made no attempt to comply with the June 2 notice at any time within that 11-day period. Thus, lessees had the notice contemplated by the lease, and the June 2 notice complied with the statute.

The third argument appears to be that because the unlawful detainer action first filed, in which no request was made for termination of the lease, was still pending when lessees were served with the June 2 notice, which stated that the lease would be terminated, lessees were confused and the June 2 notice should somehow be held to be ineffective with respect to termination of the lease. Not so. Lessors dismissed the first action on the same day they filed the instant unlawful detainer action. It is the June 2 notice upon which the instant action is based and it was not ambiguous in the least with respect to termination of the lease. It was incumbent upon lessees to pay the rent that was due. Had they done so the lease would not have been terminated.

*Credit for Advance Rental Payment of $3,000*

█ Lessees contend that the $4,500 in rent with respect to the second term paid by them upon execution of the lease was in reality payment in advance of the first month's and last two months' rent of $1,500 each. Lessees then urge that the primary function of this advance payment of rent was to secure the performance by them of the lease and that the payment referable to the last two months' rent should have been credited pursuant to Civil Code section 1950.7 against the

amount of rent found unpaid by the court and included in the judgment. Again, we do not agree.

Civil Code section 1950.7 provides for the return by the lessor to the lessee of "[a]ny payment or deposit of money the primary function of which is to secure the performance of a rental agreement for other than residential property or any part of such agreement, *other than a payment or deposit, including an advance payment of rent, made to secure the execution* of a rental agreement...." (Civ. Code, § 1950.7, subd. (a), italics added.) Although the trial court made no express finding that the $4,500 rent payment called for by the lease and made by lessees upon execution of the lease was a payment to secure execution of the lease, the court impliedly so found in ruling against lessees' claim that they should receive credit for $3,000 of the $4,500 and in finding the amount due lessors to be $7,550.41.

The implied finding is amply supported by the record. There is nothing whatever in the lease itself indicating that the $4,500 due as rent upon execution of the lease was referable to the last two months' rent, nor is there anything in the lease indicating that that payment of rent was to be considered unearned by lessors at that time so as to constitute some sort of security deposit or payment. The pertinent portion of the lease reads: "The rental for the FIVE (5) YEAR TERM provided herein, payable from LESSEE to LESSOR shall be the sum of NINETY THOUSAND DOLLARS ($90,000.00), payable as follows: the sum of FOUR THOUSAND FIVE HUNDRED DOLLARS ($4,500.00) upon execution of this instrument; the sum of ONE THOUSAND FIVE HUNDRED ($1,500.00) on the 1st day of February 1978; and the sum of ONE THOUSAND FIVE HUNDRED DOLLARS ($1,500.00) on the 1st day of each and every succeeding calendar month thereafter until the above-stated total rental shall have been fully paid."

Thus, the lease does not even identify the payment as an advance payment of rent, much less indicate that its primary purpose was to secure lessees' performance. The total agreed rent was $90,000, and we are aware of no authority prohibiting parties to a commercial lease from agreeing that more of the rent shall be paid and, presumably, earned in the fore part of the lease term than the latter. Being made payable upon execution of the lease, which occurred prior to the first day of the second lease term, it is likely that the primary purpose of the payment of $4,500 was to secure execution of the lease by lessors.

*Disposition*

Affirmed.

Tamura, Acting P. J., and McDaniel, J., concurred.

On August 15, 1980, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied October 1, 1980.