OPINION OF THE COURT
Memorandum.
Final judgment unanimously affirmed without costs.
In this holdover proceeding, landlord seeks to recover possession of the upstairs apartment of a two-family house. Respondent Kaplan is a month-to-month tenant. Respondent Creagh is an undertenant of Kaplan. Landlord resides in the downstairs apartment.
Respondents’ answer asserted three “counterclaims”. It asserted first that the proceeding was brought in retaliation for Kaplan’s commencement of a Supreme Court action against landlord to recover damages for personal injuries that Kaplan suffered when the stove in the apartment exploded. It further asserted that landlord had at various times subsequent to Kaplan’s commencement of the personal injuries action turned off the heat, hot water and electricity. Finally, the answer asserted the existence of certain code violations including, inter alia, that a key to the door lock was needed for egress and that landlord’s operation of a business in the basement gave rise to a fire hazard.
After submitting a reply, landlord moved to dismiss or sever the counterclaims. In support of his motion, landlord argued, inter alia, that Kaplan’s institution of civil litigation did not provide a basis for a claim of retaliatory eviction (citing Pezzolanella v Galloway, 132 Misc 2d 429) and that the retaliatory-eviction statute is by its terms inapplicable to owner-occupied dwellings with fewer than four residential units (Real Property Law § 223-b [6]). Landlord also argued that the counterclaim *484 based on the alleged deprivation of heat, hot water and electricity should be dismissed or severed because landlord was not seeking to recover rent or damages. Finally, landlord argued respondents have no standing to impose municipal code violations.
In opposition to the motion to dismiss, tenants contended, inter alia, that Real Property Law § 223-b is not the exclusive source of the retaliatory-eviction claim; that it existed in the case law prior to the enactment of the statute (see, e.g., Toms Point Apts. v Goudzward, 72 Misc 2d 629, and cases cited therein; Edwards v Habib, 397 F2d 687); and that the case law claim continues to coexist with the statutory claim.
The court below ruled that the retaliatory-eviction statute should be strictly construed and that it does not allow for the maintenance of the claim in this case. Accordingly, it dismissed the counterclaim for retaliatory eviction. It also severed the counterclaim for lack of heat, hot water, and electricity on the ground that this claim was unrelated to landlord’s claim for possession. Finally, it dismissed the counterclaim alleging code violations on the ground that tenants lacked standing to impose such violations.
When the matter came on for trial, landlord orally moved for summary judgment on the ground that there were no triable issues of fact remaining. This motion was granted. Landlord also sought a hearing on the fair value of use and occupancy but the court denied landlord’s application on the ground that landlord had rejected tenants’ tenders of rent. Accordingly, the court entered judgment awarding landlord possession only. Both sides appeal from the judgment.
We agree that landlord was not entitled to an award of use and occupancy. In moving to dismiss tenants’ counterclaim for lack of heat, hot water and electricity, landlord repeatedly asserted that he was merely seeking possession and not rent or damages. Having succeeded in getting tenants’ claim severed on this basis, landlord cannot now be heard to demand an award of use and occupancy.
We also agree that the retaliatory-eviction claim does not here lie. It may well be, as tenants contend, that there are instances not provided for in the statute where the defense should be allowed. The defense of retaliatory eviction is from its inception a judicially recognized defense. Rooted in the equitable power of the court (see, Edwards v Habib, supra), it is similar in nature to an equitable estoppel. While it is primarily designed as a means of furthering the public policy of fostering *485 decent and safe housing, it has been allowed, at least in other jurisdictions, even where the retaliation in question was not for the tenant’s assertion of housing-related rights but of other protected rights (see, e.g., S.P. Growers Assn. v Rodriguez, 17 Cal 3d 719, 552 P2d 721). In this jurisdiction, both courts and commentators have assumed that the case law defense continues to coexist with the statute (see, e.g., Kew Gardens Assocs. v Regan, 106 Misc 2d 267; Scherer, Residential Landlord-Tenant Law in New York § 11:20). As a result of the equitable nature of the defense, no per se rule can be laid down to govern the limitations of its applicability (see, e.g., Robinson v Diamond Hous. Corp., 463 F2d 853, 864).
In the instant case, careful consideration of the competing interests leads us to conclude that the defense should not be allowed. Uppermost in our consideration is the fact that this is a two-family home and that landlord lives in the other apartment. We do not think the public interest would be well served by keeping together in one house this landlord and the tenant who is suing him for $2 million. There are understandable references in the briefs to the “crisis” atmosphere in the house. Doubtless, it was similar considerations which prompted the Legislature’s decision to exempt owner-occupied dwellings containing four units or less from the reach of the statutory defense. Moreover, the object of Kaplan’s personal injuries action against landlord was to recover damages, not primarily to remedy the conditions in his apartment. In the circumstances of this case at least, we do not believe that his commencement of the personal injuries action constitutes an adequate predicate for allowing the retaliatory-eviction defense.
DiPaola, P. J., Collins and Ingrassia, JJ., concur.