**Margarito FLORES et al., Plaintiffs,**

v.

**FULWOOD FARMS OF FLORIDA, INC., a Florida Corporation, Ronnie D. Fulwood, Charles T. Dickens, and Tobias Sanchez, Defendants.**

**No. 78–273 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

May 5, 1978.

Alvaro Smith-Ruiz, Stephen F. Hanlon, and Robert J. Shapiro, Bay Area Legal Services, Inc., Tampa, Fla., for plaintiffs.

Michael R. Miller and John Edward Alley of Alley & Alley, Tampa, Fla., for defendants Fulwood Farms, Ronnie Fulwood, and Charles T. Dickens.

Robert M. Todd, St. Petersburg, Fla., for Tobias Sanchez.

## MEMORANDUM OF DECISION AND ORDER

KRENTZMAN, District Judge.

This cause came on for hearing on plaintiffs' claim for preliminary injunction on May 4 and 5, 1978. The proceedings were reported and a transcript is available if required.

The thirty-five plaintiffs are migrant laborers who were employed in agricultural operations at Fulwood Farms, in the vicinity of Sun City, Florida. At the time of the incidents complained of they were involved in harvesting strawberries. The harvesting operations were conducted as a joint venture of several persons doing business as "Fulwood Farms." Among the joint venturers were defendants Ronnie D. Fulwood and Charles T. Dickens. The testimony indicates that they did not deal directly with the laborers but dealt with "crew leaders" among whom was defendant Tobias Sanchez, who appears to have been a registered farm laborer contractor, as required by the provisions of Title 7, Section 2041 et seq. Some of the plaintiffs were employed at Fulwood Farms prior to January 1, 1978, and some became employed thereafter. All were working up to about April 9, 1978.

Prior to January 1, 1978, plaintiffs and others were furnished housing as a condition of employment, although none of the requirements with regard to disclosure of conditions of occupancy and employment were ever disclosed by anyone as required by Section 2045, Title 7, United States Code. On January 1, 1978, coincidental with the increase of the minimum wage to $2.65 per hour, those plaintiffs then employed were informed, and plaintiffs later employed learned at the time of employment, that a $15 weekly charge would be made for housing.

On or about March 20, 1978, several of the plaintiffs made a complaint directly to Ronnie D. Fulwood and Charles T. Dickens to the effect that as a result of their not being given work they would have problems in paying rent. On or about March 24, 1978, one or more plaintiffs contacted officers of Bay Area Legal Services in Tampa and through that agency representatives of the State of Florida Department of Commerce, who made an on-site investigation. On that occasion one of the investigators was taken into the fields so that he could investigate one of the plaintiffs who made a complaint.

On or about April 9, 1978, defendant Dickens fired a farm labor contractor and crew leader named Joe Guzman. Mr. Dickens' testimony is that he informed all of the laborers who had been employed by Mr. Guzman that they could seek employment through some other crew leader if they intended to continue working. The mem-

bers of Mr. Guzman's crew and plaintiffs herein, together with all the other workers at the farms, ceased working and that night Mr. Dickens posted on each of the residential units at "Green Camp," the place where plaintiffs were housed, a notice of eviction and shortly thereafter plaintiffs were notified by Tampa Electric Company that electrical services would be terminated, and by Tax Gas Company that propane gas service to the units would be terminated.

Plaintiffs filed the complaint herein on April 14, 1978. On April 24, 1978, plaintiffs sought a temporary restraining order in this Court. I, along with the other judges of the Middle District of Florida, was at that time in New Orleans, Louisiana attending a Fifth Circuit Judicial Conference, attendance at which is mandated by Title 28, Section 333, United States Code. As a result of plaintiffs' inability to present their application for temporary restraining order counsel for them, through negotiations, was able to accomplish agreement that termination of electrical and gas service to the housing units would be postponed and at the time of the hearing before the Court plaintiffs were still residing there. At hearing representation was made that eviction proceedings in the appropriate state court are now pending. Plaintiffs have not worked at the camp since April 9, 1978, and Mr. Dickens testified that, the strawberry season now being over, a work crew of only approximately 150 is required in the harvesting of green peppers rather than the approximate 400 to 500 workers which were required during the height of the strawberry season. Plaintiffs represent that they are without funds, have no place to reside and allege violations of the Farm Labor Contractor Registration Act (FLCRA), Title 7, United States Code, § 2041 et seq. Among other things they specifically allege that their termination was retaliation for their complaints, in violation of Section 2050b(a) of Title 7, United States Code.

Upon consideration of all the evidence it appears clear and I find that the eviction notice, termination of gas and electrical service constituted a termination of the right of occupancy, which was a consideration of employment, and was in retaliation for the legitimate assertion of complaints by or on behalf of plaintiffs of violation of rights and protections afforded by the FLCRA for which complaints the Court finds there to have been just cause.

In their complaint, plaintiffs make other claims and seek other relief. As preliminary relief they seek restitution to employment, a continuing right of occupancy, including electrical and gas service, and other relief.

As a prerequisite to granting temporary or preliminary relief the Court should, of course, consider the prerequisites enunciated in *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975) and other cases. This the Court has done and upon balance finds that there is a substantial likelihood that plaintiffs will prevail upon final hearing, that the irreparable harm to be suffered by plaintiffs in the absence of relief outweighs the harm possibly caused defendants by the granting of relief and that there is great public interest in protecting the right of plaintiffs.

Fashioning appropriate relief in this case is difficult. The plight of migrant laborers in this country is a tragedy which should weigh upon the conscience of all and which outweighs any monetary burden amelioration thereof may impose. Defendants invited plaintiffs to work. Although the owners of Fulwood Farms are not directly covered by the FLCRA, defendant Sanchez was and is. The relationship between him and the operators of Fulwood Farms is such that they must have known of the failure on his part to make the disclosures required by the Act.

All of defendants are "persons" as that word is used in Sections 2041 and 2050b(a) prohibiting retaliatory action.

Representatives of Fulwood Farms suggest that they now have no need of the services of plaintiffs and suggest that as they have done in the past, they should "leave like a covey of quail." To require defendants to now re-employ plaintiffs might very well result in the employment of other migrant laborers being terminated, thus restitution of employment of plain-

tiffs, while encouraged, is not directed. Under the circumstances, plaintiffs' right of occupancy of the premises, together with electrical and gas service without charge, unless they are furnished employment, for a reasonable period of time should be continued and is directed. Defendants and all other persons in conjunction therewith are restrained from taking any action which would require the vacation of said premises for a period not before May 24, 1978, and defendants and their representatives are directed to take such necessary action to insure continued right of occupancy, if desired, by plaintiffs together with such utility services.

The plight of plaintiffs though not legally an obligation of defendants, hopefully will be ameliorated by private and governmental agencies who have assumed or are charged with that responsibility.

Defendant Tobias Sanchez is directed not to violate and is restrained from violating any provisions of the Farm Labor Contractor Registration Act, Title 7, Section 2041, et seq.

The Court retains jurisdiction for the purpose of enforcing the provisions of this injunction in the event the same should be required.

IT IS SO ORDERED at Tampa, Florida this 5th day of May, 1978.